Rebecca Cambreleng, OSB No. 133209
rebecca@employmentlaw-nw.com
**CRISPIN MARTON CAMBRELENG**
1834 SW 58th Avenue, Suite 200
Portland, Oregon 97221
Telephone: 503-293-5770
Fax: 503-293-5766
    Of Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

(Pendleton Division)

| | |
|---|---|
| **SARAH CARTER,** an individual, | Case No. 6:20-cv-1012 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| **THE COQUILLE SCHOOL DISTRICT #8,** a public school district and **TONY JONES**, an individual, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## NATURE OF THE ACTION

1. This is an action under 42 U.S.C. § 1983; Title IX, 20 U.S.C. §1681(a); and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*. This complaint alleges unlawful employment practices on the basis of sex.

## JURISDICTION AND VENUE

2. This court has jurisdiction over the subject matter of this complaint pursuant to

28 U.S.C. § 1331.

3.      The employment practices described herein are alleged to have been committed in the District of Oregon.

**PARTIES**

4.      Plaintiff **SARAH CARTER** is a female resident and citizen of the state of Oregon, who was employed by defendant Coquille School District at all material times. At all material times, she was an employee for purposes of the claims set forth herein.

5.      Defendant **THE COQUILLE SCHOOL DISTRICT #8 (CSD)** is a public school district in the State of Oregon. At all material times, defendant CSD employed 25 or more employees and was and is an employer and/or person for purposes of the claims set forth in this complaint.

6.      Defendant **TONY JONES** is an individual who, at all material times, was a resident of the state of Oregon and employed by CSD as Principal of Winter Lakes School. He is named in his individual capacity for actions taken outside the course and scope of his employment and not for any benefit of CSD.

**PROCEDURAL REQUIREMENTS**

7.      Plaintiff timely filed an administrative complaint with the Equal Employment Opportunity Commission.

8.      Plaintiff has timely satisfied all administrative prerequisites, if any, to the filing of the statutory claims set forth in this complaint.

**GENERAL ALLEGATIONS**

9.      Plaintiff was hired by CSD on September 15, 2017 as a cafeteria worker and

aide.

10.     On February 15, 2018 a student threatened to "shoot up" the Winter Lakes School where Plaintiff was working. Multiple witnesses reported the threat of gun violence to the police and Winter Lakes' principal, Defendant Jones.

11.     For weeks after the threat, the staff at the school asked for information about what was being done to keep them safe and inquired about training and safety protocols to address gun violence. However, staff did not receive any information from Defendant Jones or the district about their inquiries and no additional safety protocols were put in place.

12.     Staff expressed daily fears and anxieties about the threat of student gun violence how easily they could be targeted, and how little administration appeared to care about their safety

13.     At that time, Plaintiff was the Coquille/Myrtle Point Community Emergency Response Team leader. After the shooting threat, Plaintiff sought to organize a training for the staff because the district did not provide any active shooter trainings. To assist her with the training, she sought guidance from the local Sheriff. However, the Sheriff was unaware of the gun threat and became angry that he was not informed by local police or the district. He went unannounced to a meeting with Superintendent Tim Sweeney, Defendant Jones, and the local police chief to express his concerns.

14.     As a result, on March 5, 2018, Plaintiff was put on immediate paid administrative leave with no notice, in violation of her collective bargaining agreement for speaking with people outside the district about active shooter trainings.

15.     Plaintiff was given a letter of directive from Mr. Sweeney, the Superintendent,

and was placed in her personnel file as a result of the administrative leave.

16. The letter of directive stated "At no point are you to discuss your concerns about a student with someone outside of the school district. Failure to comply with this directive can result in immediate termination."

17. A few months after Plaintiff received the written directive, she was approached by Student 1 who reported a rape by a male student off campus during after school hours.

18. Student 1 disclosed this information to Plaintiff and another individual, Erin Thomason. Student 1 refused to report to police and was in fear for her safety.

19. Not knowing what to do, and with the directive still fresh on her mind, Plaintiff and Ms. Thomason went to Defendant Jones and explained what had been reported to them.

20. Defendant Jones told them that because it didn't happen on school property there was nothing he could do.

21. Defendant Jones did not report to an outside agency and did not tell Plaintiff or Ms. Thomason to report to an outside agency.

22. Upon information and belief, Ms. Thomason went home that evening and, against Defendant Jones' directive, reported to DHS. She told Plaintiff she had done this the following day. Ms. Thomason was not disciplined for this this report.

23. During the conversation with Student 1, Plaintiff was asked about the morning after pill as Student 1 was afraid that her rapist had impregnated her. Plaintiff offered support and factual information about the pill.

24. At the time Plaintiff spoke to Student 1 about the morning after pill, in front of witnesses, she was not reprimanded, talked to, or in any way disciplined for having the

conversation.

25. Less than a year later, on March 19, 2019, Plaintiff was approached by several underage female students who told her the same male student who raped Student 1 was sexually harassing them, had touched some of the girls inappropriately, and threatened other girls with rape.

26. Plaintiff immediately reported this to Defendant Jones, who was standing with two male employees.

27. Defendant Jones acknowledged Plaintiff's report and stated he would "take care of it". Plaintiff went back to the students and told them of her report to Defendant Jones and his assurance that he would handle it.

28. Plaintiff, knowing she was still under the edict of the Letter of Directive, did not report immediately to DHS. Plaintiff believed that Defendant Jones would report to DHS, as he told her he would "take care of it".

29. On April 4, 2019, Plaintiff was approached by one of the girls who reported the sexual harassment and asked why no one had talked to her.

30. Plaintiff immediately went to Defendant Jones to check on the status of the reporting and investigation. Defendant Jones explained that he had sat the male student down and told him not to engage in that behavior anymore.

31. None of Defendant Jones, nor the two male teachers that were standing with Defendant Jones when Plaintiff reported the accusations.

32. By April 8, Plaintiff was frustrated that nothing had been done by Defendant Jones and expressed her frustration to another staff member. That staff member explained that

Plaintiff should have called DHS since the girls were underage. Plaintiff, still worried she would lose her job if she discusses student concerns outside the school system, decided that these girls were more important than her job.

33. That evening, Plaintiff made her first call to DHS. There was no answer and she left a message with the DHS' office. She never received a response.

34. Between April 1 and April 23, the police finally learned about the accusations against the male student. They begin their investigation into the matter.

35. On April 26, Plaintiff received an email from the CSD's investigator, Wayne Gallagher, to immediately cease all communications with students via social media.

36. Plaintiff had never spoken with any student on social media and the only student she talked to outside of school was Student 2. Student 2's father was aware of their communications and encouraged it, as there was a personal relationship outside the school context and Plaintiff had been helping Student 2 cope with emotional issues.

37. On May 15, 2019, Plaintiff was placed on immediate paid administrative leave with no warning "because her story did not match students or police".

38. Plaintiff had not spoken with police about the students' reports.

39. On June 5, 2019, Plaintiff was sent a termination letter. The reasons given for termination were: 1) Failure to follow mandatory reporting law; 2) inconsistent statements given in interviews, 3) lacking appropriate judgment by talking to students about criminal conduct. Plaintiff's termination was effective June 10.

40. Defendant Jones and the two male employees were not disciplined for failing to report.

41. At the July 17, 2019 school board meeting, the school board voted to uphold the termination.

42. On August 19, 2019, Tony Jones was promoted from Principal of Winter Lakes to Director of Alternative Education and Director of Career Technical Education.

43. On June 18, 2020, the male student pled guilty to rape, sexual assault, and other related charges.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANT COQUILLE SCHOOL DISTRICT

(42 U.S.C. § 2000e-2(a) – Sex Discrimination)

44. Plaintiff incorporates paragraphs 1 through 43 as though fully set forth herein.

45. Plaintiff is a female and identifies as a female.

46. Defendant CSD discriminated against plaintiff in the terms and conditions of her employment as alleged herein in substantial motivating part due to her sex.

47. Defendant CSD's actions violated 42 U.S.C. §2000e-2(a) and Plaintiff is entitled to appropriate relief.

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANT COQUILLE SCHOOL DISTRICT

(20 U.S.C. §1681(a))

48. Plaintiff incorporates and realleges paragraphs 1 through 43 and 45 by reference as though set for fully herein.

49. Title IX of the Education Amendments of 1972 provides, in relevant part, that: No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

50. Title IX of the Education Amendments of 1972 applies to an entire school or institution if any part of that school receives federal funds.

51. Upon information and belief, CSD receives federal funding.

52. Defendant CSD subjected Plaintiff to discrimination on the basis of her sex in violation of Title IX.

53. As a direct and proximate result of the above conduct, Plaintiff sustained damage, including, without limitation, emotional distress, loss of career opportunities, economic injuries, and other direct and consequential damages.

54. As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

### THIRD CLAIM FOR RELIEF AGAINST ALL DEFENDANTS

(42 U.S.C. § 1983)

55. Plaintiff incorporates paragraphs 1 through 43 as though fully set forth herein.

56. While acting under color of law, defendants Jones and CSD took adverse employment actions against plaintiff's employment in violation of her due process rights and her protected first amendment rights.

57. Plaintiff's disclosures, complaints, and expressions of opposition as described herein constituted speech that was a matter of public concern because it related to the safety of staff and students, sexual assault of minors, mandatory reporting, gun safety, and sexual assault survivor rights.

58. Plaintiff's speech was made as a citizen and not pursuant to her official job duties as an employee of CSD.

59. Plaintiff's speech was a substantial or motivating factor for the unfavorable terms and conditions of plaintiff's employment.

60. Plaintiff's interest in her speech outweighs any defendants' interest in administrative efficiency.

61. Defendants, acting under color of state law, violated plaintiff's right to equal protection of law as guaranteed by the Fourteenth Amendment to the United States Constitution in subjecting plaintiff to different treatment based on sex and in retaliating for plaintiff's pursuit of her rights, which rights were clearly established.

62. Defendants acted pursuant to a policy or practice of discriminating against female employees and whistleblowers.

63. Defendants' actions were part of a systematic pattern of conduct taken in retaliation for plaintiff's protected activities and protected classifications. Defendants' actions were intentional or made with deliberate indifference to plaintiff's United States Constitutional rights, taken under color of state law, and deprived plaintiff of her right to free speech under the United States Constitution.

64. Plaintiff is entitled to a declaration that defendants acted in violation of the

CRISPIN MARTON CAMBRELENG
1834 SW 58th Avenue, Suite 200
Portland, Oregon 97221
Telephone: 503-293-5770

statutory provisions set forth herein.

65. As a result of defendants' wrongful conduct, plaintiff has been subjected to damage to her professional reputation, emotional pain, suffering and humiliation, and physical manifestations thereof, entitling her to compensatory damages in an amount to be established at trial and awarded by a jury.

66. Defendant Jones' acts were done intentionally with a discriminatory motive and with malice or ill will or with knowledge that his actions violated federal or state law or with reckless disregard or callous indifference to the risk that his actions violated federal or state law. Defendant Jones should be assessed punitive damages in an amount to punish defendant and deter defendant and others from similar conduct in the future.

67. Plaintiff is further entitled to recover her reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court to:

1. Declare defendants in violation of the statutes set forth in plaintiff's claims for relief;

2. Order defendants to make plaintiff whole by providing compensation for non-economic losses in an amount as awarded by the court or a jury;

4. Award plaintiff her costs of suit and reasonable attorney fees, costs, and expert witness fees;

5. Order defendants to pay prejudgment interest and post-judgment interest on all

amounts due to plaintiff as a result of this action, with interest at the prevailing rate; and

6. Order such further or alternative relief in favor of plaintiff as the court deems appropriate.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all questions of fact or combined questions of law and fact raised by this complaint.

DATED June 24, 2020.

                              **CRISPIN EMPLOYMENT LAW PC**

By:   */s Rebecca Cambreleng*
       Rebecca Cambreleng, OSB No. 133209
       Of Attorneys for Plaintiff