IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

SARAH CARTER,

        Plaintiff,

v.

THE COQUILLE SCHOOL
DISTRICT #8; TONY JONES,

        Defendants.

Civ. No. 6:20-cv-01012-AA

**OPINION & ORDER**

AIKEN, District Judge.

This matter comes before the Court on Defendants' Motion for Summary Judgment. ECF No. 19. The Court concludes that this matter is appropriate for resolution without oral argument. For the reasons set forth below, the motion is GRANTED and Plaintiff's claims under Title VII and Title IX are DISMISSED.

**LEGAL STANDARDS**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could

return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630-31.

## BACKGROUND

Plaintiff Sarah Carter was employed by Defendant Coquille School District No. 8 as an aide and cafeteria worker at the Winter Lakes School from September 2017 through her termination in July 2019. Compl. ¶ 9. ECF No. 1. As part of her work, Plaintiff participated Safe Schools Training on August 27, 2018 and in Child Abuse Mandatory Reporting training on September 6, 2018. Jacobson Decl. Ex. 2; Ex. 3; Ex. 4. Plaintiff also signed the Coquille School District Policy on Staff Use of Electronic Devices on September 21, 2018. Jacobson Decl. Ex. 5. The policy provided that communications with students using personal electronic devices regarding non-school related matters was prohibited during work hours and strongly discouraged at all

other times and the policy warned that failure to comply with its terms could result in discipline up to and including termination. *Id.*

Tim Sweeney is the superintendent of Coquille School District No. 8. During the relevant period, Defendant Tony Jones was the principal of Winter Lakes and Lonnie Usrey was the vice principal. Kent Rilatos was a teacher at Winter Lakes and Erin Thomason was a teacher's aide at the same school.

### I.   The Letter of Directive

In addition to her work at the school, Plaintiff was also a Community Emergency Response Team ("CERT") leader for the communities of Coquille and Myrtle Point. Cambreleng Decl. Ex. 1, at 3. In that capacity, Plaintiff discussed expressed concerns about a particular student to employees of the county sheriff in early 2018. Plaintiff's comments led to a meeting between the sheriff, Sweeney, Jones, and the chief of police for Coquille. *Id.* at 15. Following that meeting, Jones placed Plaintiff on paid administrative leave for discussing information about a specific student outside of the school. *Id.* at 17. Plaintiff was also "chewed out" by the Coquille police chief, who told her that a threat assessment had been done on the student in question and that Plaintiff "should not be spreading rumors and this is an unfounded event and it's not my concern to get involved." *Id.*

On March 7, 2018, Sweeney issued a "non-disciplinary letter of directive" to Plaintiff, the stated purpose of which was "to make clear to you the districts expectations regarding discussing students in and out of the workplace." Jacobson Decl. Ex. 1. The letter of directive had seven numbered paragraphs with instructions

for Plaintiff. The first paragraph stressed that all information about students should be treated as confidential, while the second instructs Plaintiff that when she discusses students with coworkers, "it should be as it relates to the student's academic progress and supports necessary to achieve that progress." *Id.* The third paragraph tells Plaintiff that if a student "does something that concerns you, take that information immediately to your supervisor." *Id.* If Plaintiff felt that her supervisor was not taking the information seriously, Plaintiff was told to contact the superintendent and that she could involve her union representative "[a]t any point in the process." *Id.* Three paragraphs of the letter of directive warned Plaintiff that failure to comply would result in termination:

> 4. At no point are you to discuss your concerns about a student with someone outside of the school district. Failure to comply with this directive can result in immediate termination from employment.
>
> 5. You may never post information about a student on a social media site nor text information about a student to someone outside of the district. Failure to comply with this directive can result in immediate termination from employment.
>
> \*   \*   \*
>
> 7. At all times when communicating about a student, your information must be factual and evidence based. Spreading of unfounded rumors about students can result in termination from employment.

Jacobson Decl. Ex. 1.

Plaintiff signed the letter on March 7, 2018. Jacobson Decl. Ex. 1.

## II. Investigations into Incidents of Sexual Abuse and Assault at Winter Lakes

At some point between March and April of 2018, a student reported to Plaintiff and Thomason that she had been raped by another student, D.T. The

Page 4 –OPINION & ORDER

victim told Plaintiff that she would not speak with the police about the assault. Jacobson Decl. Ex. 7, at 4. Plaintiff said she "didn't even think about contacting [the victim's] parents." Cambreleng Decl. Ex. 1, at 8.

During the subsequent police investigation, Plaintiff told the officer about this incident and "remembered giving [the victim] money to go purchase a day after pill to prevent pregnancy." Jacobson Decl. Ex. 6, at 8-9. In later statements, Plaintiff denied giving money to the student victim to purchase the morning after pill and testified in her deposition that that the student victim "asked me about the morning after pill and I called Safeway to find out, you know, how that works because she's 17 and was refusing to get care," and was told that the pill cost $60. Cambreleng Decl. Ex. 1, at 7.

During the school district's subsequent investigation into the events at Winter Lakes, Plaintiff told the investigator that she asked the victim "about taking a 'Morning After Pill.'" Jacobson Decl. Ex. 7, at 4. Plaintiff "telephoned the local Safeway store pharmacy to see if they had the pill on hand and the pharmacy did and she found it would cost $60.00." *Id.* Plaintiff did "not recall with certainty, but she may have offered to pay for the pill herself," although the victim declined the offer and told Plaintiff she would go to Coos Bay and get the money herself. *Id.*

In her deposition in the present case, Plaintiff testified that the victim was the first person to suggest emergency contraception and Plaintiff denied that she ever offered the victim money for the pill and that she did not, to the best of her

recollection, ever tell anyone that she had made such an offer. Cambreleng Decl. Ex. 1, at 8.

Plaintiff testified that she and Thomason told Jones about the victim's report and he "told us that because it didn't happen on school grounds and she won't go to the police there is really nothing that we could do." Cambreleng Decl. Ex. 1, at 7. Plaintiff testified that she was uncomfortable with that outcome and encouraged Thomason to call and report the incident. *Id.* Plaintiff testified that she "didn't know that we're all supposed to call when we know." *Id.* at 7-8. Plaintiff told the school district investigator that she was "unaware of a reporting policy at school and had not read it." Jacobson Decl. Ex. 7, at 5.

Thomason made a report to DHS concerning the victim's report of being raped by D.T. some hours later. Cambreleng Decl. Ex. 4, at 3. Neither Plaintiff nor Jones made a report of the incident to DHS.

As subsequent events would reveal, multiple students at Winter Lakes were subject to sexual abuse, harassment, and assault at the hands of D.T. On March 19, 2019, a group of D.T.'s victims confronted him in a nearby park. Two of the victims told Plaintiff about the confrontation afterwards. Cambreleng Decl. Ex. 1, at 9. Plaintiff testified that she promptly reported the matter to Jones and that the report was overheard and commented on by Usrey and Rilatos, who were standing nearby. *Id.* at 9-10. Jones told Plaintiff that he would take care of it. *Id.* at 10. Plaintiff testified that she believed her conduct was consistent with the requirements of the letter of directive. *Id.* Plaintiff later told police that she "assumed Jones would have

handled this incident and been the one to report it if it was something that needed [to be] reported." Jacobson Decl. Ex. 6, at 26. Plaintiff did not report the incident to DHS, nor did Jones, Usrey, or Rilatos.

Plaintiff kept a journal of events and the entry of April 2, 2019, recorded that another student reported D.T. touching her inappropriately and that Plaintiff relayed the report to Jones. Jacobson Decl. Ex. 10, at 3.

Plaintiff's journal entry of April 11, 2019 indicated that Plaintiff attempted to call DHS and that her call went unanswered. Jacobson Decl. Ex. 10, at 6.

On April 12, 2019, police commenced an investigation into allegations against D.T. The investigation was not initiated by any report made by a member of school staff. During the investigation, police interviewed multiple victims, as well as interviewing Plaintiff, Thomason, Sweeney, Jones, Usrey, and Rilatos. Jacobson Decl. Ex. 6.

On May 8, 2019, D.T. was arrested and charged with multiple counts of rape and sexual abuse. Jacobson Decl. Ex. 6.

The school district commenced its own investigation into misconduct at Winter Lakes, which was carried out by the district's director of special programs, Wayne Gallagher. Cambreleng Decl. Ex. 2.1, at 5. On April 26, 2019, Gallagher emailed Plaintiff that he had learned she was communicating with students via text messages and over social media. Jacobson Decl. Ex. 8. Plaintiff was told to "cease this behavior immediately" asked to turn over any communications she had received from students. *Id.* Among those communications were text messages

between Plaintiff and a student in which they discuss the investigation into D.T. Jacobson Decl. Ex. 9.

As part of the school district investigation, Plaintiff was interviewed on May 28, 2019 by D. Craig Stoelk. Jacobson Decl. Ex. 7, at 2. During the interview, Plaintiff told Stoelk that she was not familiar with the school district's policies and that she had not done any training other than a recent "active shooter" training. *Id.* at 3.

Plaintiff told Stoelk about the incident in 2018 when a student disclosed to her and Thomason that she had been raped by D.T., as well as the subsequent discussion about the morning after pill. Plaintiff also told Stoelk that she and Thomason had reported the incident to Jones and that Jones told them "that because the rape had occurred off school grounds it was nothing for the school to involve itself with." Jacobson Decl. Ex. 7, at 4. Jones did not tell Plaintiff or Thomason to report the matter to the police or to DHS. *Id.* Plaintiff said that Thomason made a report to DHS after going home at the end of the day. *Id.* Plaintiff told Stoelk that she attempted to make a report to DHS after work the following day but had been sent to a voice mail where she left a message that she needed to report a sexual assault, along with her contact information. *Id.* Plaintiff told Stoelk that DHS did not call her back and that Plaintiff did not make any subsequent attempt to call DHS. *Id.* at 5. Plaintiff said she did not leave any details about the victim or the offender in her message because she believed that would "be a violation of HIPPA." *Id.* Plaintiff did

not call the police because the victim had told her she did not want to speak to the police. *Id.*

Plaintiff told Stoelk about the incident on March 19, 2019 when a group of D.T.'s victims confronted him in a park and about Jones's apparent failure to follow up on that report. *Id.* at 5-6. Plaintiff also told Stoelk that the one of the victims had sent Plaintiff a copy of a video of the confrontation with D.T. in the park over Facebook messenger, which Plaintiff said she had passed on to Jones. *Id.* at 6. Plaintiff also disclosed that she was in communication over messaging apps with another student, but that their communications stemmed from a prior friendship that predated Plaintiff's employment with the district. *Id.*

### III.    Plaintiff's Termination by the School District

On May 28, 2019, Plaintiff met with Sweeney to discuss the results of the school district investigation and was told she could bring her union representative to the meeting. Jacobson Decl. Ex., 21. The primary issues of concern were that Plaintiff had failed to make mandatory reports of sexual abuse to DHS or the police; that she was engaged in out-of-school contact with students through text messages and social media; and that she had advised a student victim about emergency contraception.

On May 28, 2019, the father of one of the students at Winter Lakes wrote a letter stating that he approved of out-of-school communications between Plaintiff and his daughter due to a prior personal relationship between Plaintiff and the student. Jacobson Decl. Ex. 11.

On June 5, 2019, the school district concluded its investigation and Sweeney disciplined Plaintiff, Thomason, and Jones for their response to reports of sexual abuse and harassment by D.T.

The school district determined that Thomason had failed to comply with her mandatory reporting obligations by waiting several hours to call DHS after receiving a report that D.T. had raped another student. Jacobson Decl. Ex. 12. Thomason was issued a letter of reprimand and placed on leave with pay for one day. *Id.*

The district issued a letter of reprimand to Jones, finding that he "repeatedly failed to comply with your mandatory reporting obligations during the 2018-19 school year." Jacobson Decl. Ex. 13. Jones was placed on leave without pay for ten days and the school district froze his pay for the 2019-20 school year. *Id.* Jones was subsequently removed as principal of Winter Lakes and appointed as the school district's director of alternative education. Jacobson Decl. Ex. 24, at 5.

Plaintiff was terminated from her employment, effective immediately due to "serious misconduct." Jacobson Decl. Ex. 14. The notice of termination informed Plaintiff that:

> The basis of this action is your serious lack of professional judgment in your interactions with students, your failure to comply with your mandatory reporting obligations, and your violation of previously issued directives related to off-campus contact of students and families. At the investigatory meeting on June 5, 2019, you were given an opportunity to present any information you wanted me to consider . . . At the meeting you stated that in spite of being directed by the district to discontinue all social media contact with students you continue to do so. Although you deny providing any a [sic] student with medication, there is sufficient evidence to believe that you participated at some level in a student receiving medication.

Jacobson Decl. Ex. 14.

On June 11, 2019, Plaintiff appealed her dismissal to the school board with the assistance of her union. Jacobson Decl. Ex.15. During that appeal, Plaintiff made statements indicating that she did recall having participated in mandatory reporter training, despite having told the school district investigator that she did not remember doing the training. Jacobson Decl. Ex. 16.

At the subsequent hearing before the school board, Sweeney asked the board to uphold Plaintiff's dismissal on the basis that (1) she had failed to make mandatory reports of sexual abuse and assault on more than one occasion, despite undergoing training on her reporting obligations; (2) failure to refrain from communicating with students via social media and text messages after being directed to do so; and (3) that she had advised one of the student victims concerning emergency contraception and, in the version of events reported by the police, had given the student money to purchase the medication. Jacobson Decl. Ex.17.

In his subsequent deposition, Sweeney testified that the principal reason for Plaintiff's termination was that she "continually throughout the spring of 2019 showed a lack of professional judgment," which made her continued employment "untenable." Cambreleng Decl. Ex. 2.1, at 5. Sweeney testified that he had seen text message exchanges showing that Plaintiff was in contact with multiple students outside of school, in violation of directions to cease such communications. *Id.* at 7. Sweeney also testified that Plaintiff's involvement in the provision of emergency contraception to one of the student victims was a serious concern, whether or not

Plaintiff's involvement rose to the level of giving the student money to purchase the pill. *Id.* at 8-9. Sweeney noted that Plaintiff had not contacted the student victim's parents concerning the matter. *Id.* at 9.

The school board convened to consider Plaintiff's termination on July 16, 2019. Jacobson Decl. Ex.18. During that meeting, Plaintiff denied assisting any student in getting medication or providing money for that purpose. *Id.* at 1. Plaintiff acknowledged that she was in communication with one of the students through a messenger app but stressed that it was with the permission and approval of the student's father. *Id.* at 2-3.

During executive session, the school board questioned Sweeney about the reasons for Plaintiff's termination. Jacobson Decl. Ex. 18, at 6. Sweeney told the board that disregarding a directive to cease out-of-school communications with students could be a termination offense, as could giving medical advice to a minor. *Id.* Sweeney expressed to the school board that he did not believe that the failure to report abuse to DHS, standing alone, could justify termination because other employees, notably Jones, had also failed to make reports and had been retained. *Id.* at 7. When the school board returned to open session it voted unanimously to uphold Plaintiff's termination. *Id.* at 14.

Plaintiff's union notified her by letter on July 23, 2019 that it would not pursue arbitration following the school board's decision because of Plaintiff's failure to follow mandatory reporting laws; the inconsistent statements she gave during interviews;

and her lack of "appropriate judgement by willingness to engage in conversations with students about criminal conduct." Johnson Decl. Ex. 19.

## DISCUSSION

Plaintiff brings claims (1) against the District for sex discrimination pursuant to Title VII, 41 U.S.C. § 2000e-2(a); (2) against the District for discrimination on the basis of sex pursuant to Title IX, 20 U.S.C. § 1681(a); and (3) against all Defendants for violation of her constitutional rights pursuant 42 U.S.C. § 1983.

In her Response, Plaintiff withdrew her claims under § 1983 and her claims against Defendant Jones individually, noting that she would replead those claims in an amended complaint after the resolution of the present Motion. Resp. 27. ECF No. 27. This leaves only Plaintiff's claims under Title VII and Title IX.

### I.    Title VII

Plaintiff claims that the school district discriminated against her on the basis of her sex when it terminated her but retained male employees Jones, Usrey, and Rilatos, who Plaintiff contends were guilty of similar misconduct. Under federal law, is unlawful for an employer to discharge or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such an individual's sex, or to otherwise adversely affect the individual's status as an employee because of their sex. 42 U.S.C. § 2000e-2(a)(1)-(2).

Claims for disparate treatment under Title VII are subject to the familiar *McDonnell Douglas* burden shifting framework. Under that framework, the employee must first establish a prima facie case of discrimination. *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792, 802, (1973). The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the challenged action. The burden then shifts back to the employee to show that the given reason "is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered reason is unworthy of credence." *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123-24 (9th Cir. 2000) (internal quotation marks and citation omitted).

To establish a prima facie case of gender discrimination, a plaintiff must show that "(1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." *Chaung*, 225 F.3d at 1123.

Here, Defendants dispute only the final element of Plaintiff's prima facie case—that similarly situated individuals outside of Plaintiff's protected class were treated more favorably. In response, Plaintiff points to the more lenient discipline handed down to Jones and to the fact that Usrey and Rilatos were not disciplined at all, despite a common failure to make mandatory reports of abuse to DHS or the police.[1]

The Ninth Circuit has held that "individuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003). "In order to show that the 'employees' allegedly receiving more favorable treatment are similarly situated (the fourth element

---

[1] Thomason, as a woman, is not outside of Plaintiff's protected class and so cannot serve as a similarly situated comparator, notwithstanding that she was subject to less severe discipline that Plaintiff.

necessary to establish a prima facie case under Title VII), the individuals seeking relief must demonstrate, at the least, that they are similarly situated to those employees in all material respects." *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006). "The employees' roles need not be identical," and "[m]ateriality will depend on context and the facts of the case." *Hawn v. Executive Jet Management, Inc.*, 615 F.3d 1151, 1157. Resolving the question of "whether employees are similarly situated—*i.e.*, whether they are similar in all *material* respects—is a fact-intensive inquiry, and what facts are material will vary depending on the case." *Id.* (internal citation omitted, emphasis in original). Of particular note, however, the Ninth Circuit has held that "[e]mployees in supervisory positions are generally deemed not to be similarly situated to lower level employees." *Vasquez*, 349 F.3d at 641.

In this case, Jones and Usrey were school administrators and thus supervisory employees, while Plaintiff was a non-supervisory cafeteria worker and educational aide. Likewise, Rilatos was a licensed teacher with entirely different duties and responsibilities from those assigned to Plaintiff. In addition, while Plaintiff, Jones, Usrey, and Rilatos share a common failure to make mandatory reports of abuse, the school board cited additional misconduct in its decision to terminate Plaintiff. Indeed, the school board's discussions during its executive session clearly demonstrate that it was not basing its decision to terminate Plaintiff solely on her failure to make mandatory reports. The school board based its decision, at least in part, on Plaintiff's failure to refrain from out-of-school communication with students despite being ordered to do so, and on Plaintiff's communications with the student victim regarding

emergency contraception. Those additional acts were not attributed to Jones, Usrey, or Rilatos and, together with the differences in positions and responsibilities, take Jones, Usrey, and Rilatos out of the realm of "similarly situated" employees. The Court concludes that Plaintiff has failed to meet her burden with respect to the fourth element of the claim.

Because Plaintiff has not demonstrated a prima facie case of gender discrimination under Title VII, the Court need not reach the subsequent steps of the *McDonnell Douglas* analysis. Defendants' motion for summary judgment is GRANTED with respect to Plaintiff's Title VII claim.

## II. Title IX

Title IX provides, in relevant part that: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

Before moving on to the substance of the claim, the Court must resolve Defendants' argument that Title VII is the exclusive remedy for claims of employment discrimination. The Ninth Circuit has not directly addressed this issue and there is a split among the circuits that have taken up the question. *Sanders v. Univ. of Idaho*, 552 F. Supp.3d 991, 1023 (Aug. 3, 2021). "The First, Third, Fourth, Sixth, and Eighth Circuits have found that a plaintiff can proceed on employment discrimination claims under both Title VII and Title IX," while "the Fifth and Seventh Circuits have held that Title VII is the exclusive remedy for employment discrimination, and that a

plaintiff cannot maintain an action under both Title VII and Title IX." *Id.* (collecting cases); *see also Hunt v. Washoe Cnty. Sch. Dist.*, Case No. 3:18-cv-00501-LRH-WGC, 2019 WL 4262510, at *6-7 (D. Nev. Sept. 8, 2019) (noting an identical division among the circuits courts as to whether a claim for retaliation under Title IX is preempted by a retaliation claim under Title VII, with the First, Third, Fourth, Sixth, and Eighth Circuits finding no preemption and the Fifth and Seventh Circuits reaching a contrary conclusion).

The district court in *Sanders* opted to follow the majority of circuit courts and concluded that the plaintiff's Title VII claims did not bar her Title IX claims, noting that "'[w]hether that person could also proceed under Title VII is of no moment, for Congress provided a 'variety of remedies, at times overlapping, to eradicate' private sector employment discrimination.'" *Sanders*, 552 F. Supp.3d at 1023 (quoting *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 563-64 (3rd Cir. 2017)); *see also Hunt*, 2019 WL 4262510, at *7 (likewise following the majority of circuits and citing to the Third Circuit's decision in *Mercy*).

Here, the Court find the reasoning of *Sanders* and the majority of circuit courts persuasive and, in the absence clear guidance from the Ninth Circuit, concludes Plaintiff's claims for discrimination under Title IX are not barred by her claims under Title VII.

Turning to the substance of Plaintiff's claim, federal courts generally evaluate employment discrimination claims brought under Title VII and under Title IX identically. *Campbell v. Hawaii Dept. of Educ.*, 892 F.3d 1005, 1023-24 (9th Cir.

2018). Because the two claims are subject to the same analysis, the Court concludes that Plaintiff's Title IX claim fails for the same reason as her Title VII claim—she cannot state a prima face case because she cannot identify a similarly situated individual outside of her protected class who was treated more favorably. The Court therefore GRANTS Defendants' motion for summary judgment as to Plaintiff's claims under Title IX.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment, ECF No. 19, is GRANTED as to Plaintiff's claims under Title VII and Title IX and those claims are DISMISSED. Plaintiff has withdrawn her claims under 42 U.S.C. § 1983 in order to replead and Plaintiff shall have thirty (30) days from the date of this Order in which to file her amended complaint.

It is so ORDERED and DATED this ___31st___ day of October 2022.

    /s/Ann Aiken  
ANN AIKEN  
United States District Judge